# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# DELTA DIVISION

ARRON MICHAEL LEWIS,                                                                  PLAINTIFF
Reg. # 16557-045

v.                                       2:20CV00184-DPM-JTK

GREG RECHCIGL, et al.                                                                DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to Chief United States District Judge D.P. Marshall Jr. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or

other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

### I.  Introduction

Plaintiff Arron Michael Lewis ("Plaintiff") was incarcerated at the East Arkansas Unit of the Arkansas Division of Correction ("ADC") when he filed this lawsuit. (Doc. No. 1). Plaintiff sued multiple health care providers alleging deliberate indifference to his serious medical needs. (Id.). Plaintiff's claims against Defendants Greg Rechcigl, Tracy Bennett, Terri Moody, Ojiugo Miennaya Iko, Meredith Turner, and Laquerius Leflore (collectively, "Defendants")[1] remain pending. (Doc. Nos. 5, 10).

On November 12, 2021, Defendants filed a Motion for Summary Judgment, Brief in Support, and Statement of Facts on the merits of Plaintiff's claims. (Doc. Nos. 59-61). Plaintiff sought, and was granted, an extension of time in which to respond to Defendants' Motion. (Doc. Nos. 62, 66). Plaintiff was given until January 12, 2022 to respond to Defendants' Motion, but Plaintiff has not filed a response and the time for doing so has passed. Further, mail from the Court to Plaintiff at his current address of record is being returned as undeliverable, with three

---

[1] Defendants answered Plaintiff's Complaint (Doc. No. 19) and provided their correct names in the Answer. The Clerk of the Court is directed to correct each Defendant's name on the docket to the name provided in Defendants' Answer, as applicable.

envelopes stamped "return to sender not at Grady County Criminal Justice Authority." (Doc. Nos. 68-70, 71). After careful consideration, and for the reasons set out below, the Court recommends Defendants' Motion be granted.

## II.     Plaintiff's Complaint

Plaintiff sued Defendants in their personal and official capacities. (Doc. No. 1 at 1-2). He alleges that around March 1, 2020, he noticed that his right foot was swollen, discolored, and painful. (Id. at 3). Plaintiff says on that same day, he began "throwing up, feeling dehydrated, having diarrhea, bad headaches, and a sore throat." (Id.). On March 9, 2020, Defendant Turner saw Plaintiff during a sick call. (Id.). Defendant Turner allegedly told Plaintiff his foot looks infected and asked how it happened, but did not provide Plaintiff any treatment. (Id.). Defendant Turner told Plaintiff she would put him on the provider list. (Id. at 7).

Accordingly to Plaintiff, by March 10, 2020 his right foot was twice the size of his left foot, was red, had purple spots on it, and was hot. (Doc. No. 1 at 3-4). Plaintiff saw Defendant Bennett on March 11, 2020 in connection with his foot. (Id. at 4). At the same visit, Plaintiff told Defendant Bennett he had been feeling sick, throwing up, feeling dehydrated, and suffering from diarrhea, headaches, and a sore throat. (Id.). Plaintiff maintains Defendant Bennett did not provide him with any treatment. (Id.).

Plaintiff saw Defendant Bennett again on or around April 15, 2020 because Plaintiff's eye was infected. (Id. at 5). Plaintiff says he showed Defendant Bennett his foot again on that day and she again denied Plaintiff treatment. (Id.).

On May 3, 2020, Defendant Leflore "did [Plaintiff's] sick call, be he would not come to [Plaintiff's] cell or look at [Plaintiff's] foot . . . ." (Doc. No. 1 at 5).

Plaintiff saw Defendant Iko for a chronic care visit on May 6, 2020. (Id. at 6). Plaintiff says he told Defendant Iko about his severely infected foot and other symptoms, but she responded that she wasn't dealing with that and denied Plaintiff treatment. (Id.)

On Monday, May 10, 2020, Plaintiff began having severe pain and throwing up blood. (Id.). Defendant Leflore and another nurse responded to Plaintiff's call, but Defendant Leflore provided Plaintiff with no treatment. (Id.).

On May 11, 2020, Plaintiff was given antibiotics and ibuprofen. (Id.).

On May 13, 2020, Plaintiff was balancing on his uninfected foot while showering, then fell and struck his shoulder against the concrete resulting in injury. (Doc. No. 1 at 6). Defendant Leflore and other nurses responded. (Id.). One of the nurses called Defendant Moody asking if Plaintiff should be taken to the hospital. (Id. at 6-7). Defendant Moody directed Plaintiff be placed in a hall cage. (Id. at 7). Some hours later Defendant Moody visited Plaintiff in the hall cage, looked at Plaintiff's shoulder, and sent him for x-rays. (Id.).

On May 15, 2020 and May 18, 2020, Plaintiff was seen by Defendant Bennett, who confirmed Plaintiff's shoulder was dislocated, told Plaintiff to fix his shoulder himself, and did not send Plaintiff to the hospital. (Id.). Defendant Turner later came to Plaintiff's cell, but also did not send him to the hospital. (Doc. No. 1 at 7).

On May 14, 2020, Plaintiff's "foot ruptured for the first time and a horrible smelling discharge began leaking from a 1 inch long opening." (Id.). Plaintiff says his foot ruptured again on May 17, 2020, and began leaking from an opening the size of a cigarette. (Id.).

According to Plaintiff, he was denied treatment for approximately 64 days. (Id.). He claims his foot is permanently deteriorated, he is in constant pain, and his shoulder is not yet fixed and also is permanently injured. (Id.). Plaintiff says he also was denied any treatment for his

other symptoms: headache; vomiting; diarrhea; dehydration; and sore throat. (Id.). He seeks damages and injunctive relief. (Doc. No. 1 at 8).

### III. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

In addition, "[a]ll material facts set forth in the statement (of undisputed material facts) filed by the moving party...shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ." Local Rule 56.1, Rules of the United States District Court for the Eastern and Western Districts of Arkansas. Failure to properly support or address the moving party's assertion of fact can result in the fact considered as undisputed for purposes of the motion. FED. R. CIV. P. 56(e).

IV.     **Facts and Analysis**

Plaintiff alleged deliberate indifference to his serious medical needs.

   A.     **Official Capacity Claims**

Plaintiff sued Defendants in their official and personal capacities. (Doc. No. 1 at 1-2). Plaintiff's official capacity damages claims against Defendants are the equivalent of claims against their employer. See Sanders v. Sears, Roebuck & Co., 984 F.2d 972, 975-76 (1993). To succeed on a claim against the employer, Plaintiff would have had to establish that an employer policy or custom was the driving force behind the violation of Plaintiff's rights. See Id. Because Plaintiff has not established that a policy or practice of Defendants' employer was the moving force behind the alleged violation of his rights, Plaintiff's official capacity claims fail.

   B.     **Request for Injunctive Relief**

Plaintiff also sought injunctive relief. (Doc. No. 1 at 8). Plaintiff asked "to have the Defendants take [him] to a wound specialist and orthopedic specialist for evaluation and possible rehabilitation." (Id.) As mentioned above, Plaintiff's claims arose during the time he was confined in the East Arkansas Regional Unit of the ADC. On December 2, 2021, Plaintiff notified the Court of his change in address. (Doc. No. 64). According to the Notice, Plaintiff is now in custody at the Grady County Law Enforcement Center in Chickasha, Oklahoma—though mail to Plaintiff at that address is being returned as undeliverable. (Doc. Nos. 64, 68-71). Because Plaintiff is no longer in custody in the East Arkansas Regional Unit, Plaintiff's request for injunctive relief is moot. Martin v. Sergeant, 780 F.2d 1334, 1337 (8th Cir. 1985) ("[A] prisoner's claim for injunctive relief . . . is moot if he or she is no longer subject to [the] conditions.")

### C. Personal Capacity Claims—Deliberate Indifference to Serious Medical Needs

The Eighth Amendment prohibits cruel and unusual punishment. U.S. CONST. AMEND. VIII. This prohibition gives rise to the government's duty to provide medical care to prisoners. "The government has an 'obligation to provide medical care for those whom it is punishing by incarceration." Allard v. Baldwin, 779 F.3d 768, 772 (8th Cir. 2015) (citing Estelle v. Gamble, 429 U.S. 97, 103 (1976)). It follows that the "Eighth Amendment proscribes deliberate indifference to the serious medical needs of prisoners." Robinson v. Hager, 292 F.3d 560, 563 (8th Cir. 2002) (internal citation omitted). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Schuab v. VonWald, 638 F.3d 905, 914 (8th Cir. 2011) (internal citation omitted). "Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs." Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997). To succeed on a claim of deliberate indifference to a medical need, a plaintiff must show he had an objectively serious medical need and prison officials had actual knowledge of, but deliberately disregarded, that need. See Washington v. Denney, 900 F.3d 549, 559 (8th Cir. 2018); McRaven v. Sanders, 577 F.3d 974, 981 (8th 2009).

As an initial matter, Plaintiff has not responded to Defendants' Motion for Summary Judgment. "All material facts set forth in the statement [of undisputed material facts] filed by the moving party . . . shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ." Rule 56.1 of the Local Rules of the United States District Court for the Eastern and Western Districts of Arkansas. Failure to properly support or address the moving

party's assertion of fact can result in the fact considered as undisputed for purposes of the motion. FED. R. CIV. P. 56(e). Because Plaintiff has filed no response, all facts set out in Defendants' Statement of Facts (Doc. No. 60) are deemed admitted. The relevant facts follow.

In his pleadings, Plaintiff identified several conditions for which he alleges he received no medical treatment, including: (1) an infection in his right foot; (2) a dislocated shoulder; and (3) headache, vomiting, diarrhea, dehydration, and sore throat, which Defendants refer to collectively as "secondary symptoms. (Doc. Nos. 1, 61). In support of their Motion, Defendants submitted a substantial volume of Plaintiff's medical records. (Doc. No. 60-1). Plaintiff has not contested the records.

Plaintiff's medical records reflect that March 9, 2020 is the first time Plaintiff reported the conditions he complains of in this case, despite numerous segregation visits by a nurse. (Doc. No. 60-1 at 63-65, 113). On March 9, 2020, at 2:28 p.m., Defendant Turner saw Plaintiff for his complaints of an infected foot, vomiting, diarrhea, headaches, sore throat, and feeling dehydrated; Plaintiff said the symptoms began two weeks earlier. (Id. at 63). Upon examination, no fever was noted, and Plaintiff's last bowel movement had been the day before. (Id.). Plaintiff's throat was red, and he was put on the list to see a provider for his throat. (Id.). Plaintiff was also prescribed Naprosyn. (Id.). Nothing in the notes from this encounter reflects anything about the condition, examination, or treatment of Plaintiff's foot; the record of this encounter is silent as to Plaintiff's foot. (Id.).

Later on March 9, 2020, at 4:40 p.m., Defendant Turner saw Plaintiff again during a sick call. (Doc. No. 60-1 at 62). Plaintiff complained that his "right foot is infected, swollen, discolored, and [he was] in severe pain." (Id.). Defendant Turner's notes reflect that Plaintiff was alert and oriented, with even and unlabored respiration. (Id.). There was no sign of

infection, swelling, discoloration, crack, warts or calluses on his right foot. (Id.). The bottom of Plaintiff's foot was red with peeling skin. (Id.). Plaintiff did not complain of pain during ambulation, and he had a steady gait. (Id.). His capillary refill was less than 3 seconds, and there was no sign of deformity. (Doc. No. 60-1 at 62).

Defendant Bennett saw Plaintiff during a sick call on March 11, 2020. (Id. at 61). Plaintiff was to be seen for a foot infection and sore throat. (Id.). The notes from Defendant Bennett's March 11, 2020 encounter with Plaintiff reflect that he had no fever, his throat presented with normal mucosa, "posterior pharynx with slight erythema, no edema, no exudate, no lymphadenopathy." (Id.). Plaintiff's respiration was unlabored. (Id.). As to Plaintiff's foot, Defendant Bennett noted "hemosiderin staining to bil ankles and lower ext; and dorsal aspect bil feet." (Id.). Defendant Bennett noted to continue with plan of care, follow up sick call PRN, and chronic care as scheduled. (Doc. No. 60-1 at 61).

Also on March 11, 2020, Plaintiff was seen by a non-party registered nurse for reasons unrelated to this lawsuit. (Id. at 61-62). At that visit, Plaintiff also ambulated "with steady gate without the use of assistive devices." (Id. at 62).

On March 14, 15, 18, 20, 21, 23, 25, 26, 27, 28, 29, and 31, 2020, Plaintiff was visited by a nurse on segregation rounds and voiced no complaints. (Id. at 58-61). Plaintiff was visited by a nurse on segregation rounds and voiced no complaints on the following dates in April: 1, 4, 5, 6, 7, 8, 10, 16, and 17. (Id. at 55-58). Plaintiff did have two sick call visits during the first half of April, both in connection with an eye infection. (Id. at 56-57). The encounter notes from those visit do not include any indication that Plaintiff complained of his foot or other symptoms at issue in this case during those sick calls. Plaintiff filed a health services request for on April 13, 2020, complaining about his foot. (Doc. No. 60-1 at 115).

During an April 21, 2020, visit by a nurse on segregation rounds, Plaintiff reported that he put in another sick call request regarding his right foot. (Id. at 55). The sick call nurse—not a party to this action—looked at Plaintiff's foot through Plaintiff's cell bars. (Id.). His foot appeared "to have petechiae, discoloration resembling mottling." (Id.).

Plaintiff again voiced no concerns to the nurse on segregation rounds on the dates of April 26, 27, 28, 29, and 30, and May 1 and 2. (Id. at 54-55).

Plaintiff saw Defendant Leflore for a sick call on May 3, 2021. (Id. at 54, 115). Plaintiff had requested the sick call for pain to his foot and wrist. (Doc. No. 60-1 at 54). Plaintiff ambulated without difficulty and his capillary refill time was less than three seconds. (Id.). The notes reflect "[s]kin color WNL. No cyanosis noted. No diaphoresis noted. NAD noted. No swelling nor redness noted." (Id.). Defendant Moody apparently was contacted and verbally ordered the prescription of Tylenol. (Id.).

Plaintiff reported no health concerns to the nurse making segregation rounds on May 4, 5, 6, or 7. (Id. at 53-54).

On May 6, Plaintiff saw Defendant Iko for a chronic care visit for Plaintiff's hypertension. (Id. at 52-53, 98-101, 105-110). Defendant Iko prescribed Lisinopril and ordered lab work. (Doc. No. 60-1 at 53). Plaintiff refused the lab work. (Id. at 73, 105-106). The notes from this encounter are silent as to Plaintiff's foot. (Id. at 52-53).

On May 8 and 9, Plaintiff again voiced no health concerns to the nurse making rounds. (Id. at 52).

Encounter notes from Plaintiff's May 9, 2020 wellness check with LPN Katrina Anderson—not a party to this action—reflect that Plaintiff requested his foot be examined. (Id. at 51-52). Plaintiff explained that he had placed an earlier sick call regarding his foot and his foot

was still paining him. (Id. at 51). Plaintiff's right foot was "pinking and bluish in color[,] slightly swollen and skin has dry patches of brownish skin on top of foot and toes were cold and back of heel was warm to touch and painful to touch per patient." (Doc. No. 60-1 at 51-52). Nurse Anderson's notes reflect that Plaintiff's foot showed signs of infection. (Id. at 52). Nurse Anderson call Defendant Moody, who gave a verbal order for Plaintiff to be placed on the provider list. (Id.). Plaintiff was instructed to call medical if his foot got worse. (Id.).

Defendant Moody renewed Plaintiff's prescription for ibuprofen on May 10, 2020. (Id. 60-1 at 51).

During segregation rounds on May 10, 2020, Plaintiff complained of foot pain, as well as diarrhea and vomiting blood. (Id.). Plaintiff requested stronger pain medication than Defendant Moody had prescribed the day before. (Doc. No. 60-1 at 51). Plaintiff saw Nurse Anderson on again on May 10, 2020 in connection with these complaints. (Id.). Nurse Anderson's notes reflect:

> Patient alert and oriented x's3; gait uneven and need assistance to walk upright; Officers Dodd reported to this nurse that inmate had blood spots on floor of cell and on toilet; Patient spit up reddish tinge phlegm while in Max Infirmary and second time he coughed up clear phlegm; no visible sores or source to blood when examined mouth. RT foot is swollen and bruised on ankle bone and warm to touch in ankle area; toes are pinkish red and less than 3 sec cap refill present; foot has marbled like color to it. Patient stated he doesn't have any feelings in toes and foot is burning pain of 9/10.

(Id.). Plaintiff was placed on the provider list for the following day. (Id.). Plaintiff, however, was placed in the Main Infirmary for observation already on May 10, 2020, after Plaintiff fell in his cell and was found with blood on his face. (Id. at 50). "[B]lood [also] was found in [the] toilet and on the floor from apparent emesis." (Id.).

While Plaintiff was in the infirmary, he yelled out for nurses multiple times stating he was vomiting blood and that his foot hurt. (Doc. No. 60-1 at 50). Neither medical staff nor security

11

staff, however, witnessed or heard Plaintiff vomiting. (Id.). Plaintiff refused his morning chow, refused his morning medication, and refused to let the nurse check his vital signs. (Id.).

The following day Plaintiff was seen by a non-party LPN. (Id. at 49-50). The LPN called Defendant Moody, who "requested pt. eval, eval was reported"; Defendant Moody gave a verbal prescription for Clindamycin, an antibiotic. (Id. at 49-50). Later that day Plaintiff was seen by a non-party doctor, who noted cellulitis in Plaintiff's right ankle, directed Plaintiff to continue the current treatment plan, and prescribed Bactrim DS, an antibiotic. (Id. at 49). Plaintiff's request for stronger pain medication was denied as not clinically indicated. (Doc. No. 60-1 at 49).

Defendant Moody was contacted by telephone again on May 13, 2020 when Plaintiff complained that he had been standing when his leg gave out on him and he hit his shoulder "on the table thing." (Id. at 48). The nurse examining Plaintiff noted visible deformity in Plaintiff's right shoulder, though there was no swelling or bruising. (Id.). Plaintiff was unable to move his shoulder but had full range of motion in his hand. (Id.). Defendant Moody ordered Plaintiff to be placed "in max hall cage to wait to be seen by a provider." It was also reported to security that "if Pt. is go out to the hospital he must be placed in complete isolation for 14 days due to possible Covid 19 exposure per Moody, APN." (Id.). "Administrations [were] notified via email that IM needs to be seen by a provider per Moody APN." (Id.).

On May 13, 2020, Defendant Moody ordered Plaintiff be placed on IV antibiotics. (Doc. No. 601-1 at 47). Plaintiff refused the IV antibiotics, and "refused to sign 206 form." (Id. at 47, 67).

Two days later, on May 15, 2020, Defendant Bennett noted abscess, cellulitis, and anterior dislocation to right shoulder. (Id. at 46). Defendant Bennett wrote:

> Pt to be seen for right foot wound, swelling, and drainage; coughing up blood; dislocated right shoulder. Pt in NAD. Pt reports he had a large area on the outside

> edge of his ankle that has been swollen up for about 1 month and it finally busted open the other day. Pt denies coughing up blood but vomited the other day and it had dark streaks in it but has not had any other episodes of that. Pt reports he dislocated his right shoulder the other day.

(Id.). Defendant Bennett ordered lab tests, and continued antibiotics and dressing changes, among other measures. (Id. at 46, 72). Plaintiff refused the lab work, stating that he could not walk. (Id. at 68, 107-108).

Defendant Bennett tried on May 22, 2020 to reduce Plaintiff's right shoulder using three different methods; none worked. (Doc. No. 60-1 at 44-45, 104; Doc. No. 60-3 at 7). Plaintiff had reported at least 20 dislocations of his shoulder after 1999 and before February 10, 2015. (Doc. No. 60-4 at 257). Plaintiff's records reflect that he is able to reduce his shoulder himself, and that he is able to dislocate his shoulder voluntarily. (Id. at 5-7, 430). The records reflect that Plaintiff "is a well-known voluntary dislocator . . . ." (Doc. No. 60-4 at 8, 264; Doc. No. 60-3 at 8-9). Plaintiff refused right shoulder reconstruction. (Doc. No. 60-3 at 9).

Defendants submitted the declaration of Dr. Nanette Vowell in support of their Motion. (Doc. No. 60-5). In Dr. Vowell's opinion, Defendants' treatment of Plaintiff's foot, shoulder, and other complaints was appropriate. (Id.) Also in support of their Motion, Defendants submitted the 2016 opinion of Earl Peeples, M.D., a medical doctor licensed to practice in the State of Arkansas, and underlying medical records. (Doc. No. 60-4). These records support the conclusion that Plaintiff is able to voluntarily dislocate his shoulder, as well as reduce his shoulder at will. (Id).

Plaintiff contested neither the medical records provided by Defendants in support of their Motion nor any other aspect Defendants' material facts. Considering the record as a whole, and Plaintiff's lack of response, the Court finds no violation occurred. Defendants provided Plaintiff care for his medical complaints as those complaints arose. Based on the record, Plaintiff's

13

complaints about his foot spanned months. But also based on the record, when Plaintiff's complaints about his foot started, his foot did not appear infected. Once Plaintiff's foot showed signs of infection, his treatment plan changed: oral antibiotics were prescribed. While the oral antibiotics may not have promptly resolved the infection, Plaintiff was examined and provided the medical care deemed appropriate by his providers. The record does not indicate that the infection was ignored.

Further, when the oral antibiotics were deemed insufficient Plaintiff was prescribed IV antibiotics. But Plaintiff refused the IV antibiotics prescribed to him. While the Court is sympathetic to Plaintiff's preference not to be stuck with a needle, precedent indicates that deliberate indifference will not be found where medical staff attempt to provide treatment but the inmate refuses to cooperate. Long v. Nix, 86 F.3d 761, 765-66 (8th Cir. 1996) (no deliberate indifference where doctor attempted to evaluate inmate's psychological problems, but inmate refused to cooperate); Beck v. Skon, 253 F.3d 330 (8th Cir. 2001) (no deliberate indifference where prison officials attempted to meet inmate's medical needs but plaintiff did not comply); Logan v. Clarke, 119 F.3d 647, 650 (8th Cir. 1997) (no deliberate indifference where efforts to treat skin infection was hampered by plaintiff's inability to or refusal to follow medical instructions).

The record reflects Plaintiff declined treatment on more than one occasion. For example, on May 7, 2020, Defendant Iko ordered lab work, the results of which work would have been a good indicator of whether Plaintiff had any infection on that date. But Plaintiff also refused that lab work. (Doc. No. 60 at ¶ 24).

As to Plaintiff's dislocated shoulder, the record likewise does not reflect deliberate indifference. Attempts were made to resolve Plaintiff's dislocated shoulder, to no avail. But Plaintiff apparently has the ability to dislocate his shoulder and then resolve the problem, at will.

In connection with Plaintiff's "secondary symptoms," again, Plaintiff was provided treatment. When he raised these medical issues, he was given medical attention.

Plaintiff may have preferred a different course of treatment—he asked the Court to order that he be sent to a wound specialist and orthopedic specialist. But prison doctors may exercise their independent medical judgment. Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997). And, "mere disagreement with treatment decisions . . . does not rise to the level of a constitutional violation." Cejvanovic v. Ludwick, 923 F.3d 503, 507-08 (8th Cir. 2019).

Where, as here, Defendants have moved for summary judgment, Plaintiff "was required 'to discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact.'" Fatemi v. White, 775 F.3d 1022, 1046 (8th Cir. 2015) (internal citation omitted). Plaintiff has not, however, met proof with proof to establish facts in dispute that would preclude partial summary judgment in Defendants' favor. Wilson v. Miller, 821 F.3d 963, 970 (8th Cir. 2016) (allegations must be substantiated with sufficient probative evidence); Bolderson v. City of Wentzville, Missouri, 840 F.3d 982, 986-87 (8th Cir. 2016) (noting plaintiff's duty to meet proof with proof in affirming summary judgment in defendant's favor). Accordingly, Defendants' Motion should be granted.

## V.     Conclusion

IT IS, THEREFORE, RECOMMENDED that:

1. Defendants' Motion for Summary Judgment (Doc. No. 59) be GRANTED

2. Plaintiff's Complaint (Doc. No. 1) be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 13th day of January, 2022.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE